FILED
2015 May-22 PM 03:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

DANNY OLIVE, JR., et. al.,
on behalf of themselves, and others
similarly situated, Plaintiffs,

v.   No. 5:15-cv-00350-AKK

TENNESSEE VALLEY AUTHORITY,
et. al, Defendants.

## REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS

As established in Defendants' opening brief (Doc. 14), Plaintiffs' Amended Complaint fails to state a claim under the Fair Labor Standards Act (FLSA). Plaintiffs' Response (Doc. 19) does not show otherwise.

**I.   Passing Through Radiation Monitors Is Not Integral and Indispensable.**

Plaintiffs claim that passing through radiation monitors is "integral and indispensable" and, thus, "work" because "the act of processing through the radiation monitors is an activity required by the Defendants" and because the "radiation monitors truly benefit[] [TVA]." (Resp. at 14-15.) Plaintiffs do not plead these facts in their Amended Complaint.[1] In any event, they are wrong. As they concede, the Nuclear Regulatory Commission (NRC)—not TVA—imposes this requirement. 10 C.F.R. §§ 20.1502, 20.2206(b). And as the Eleventh Circuit

---

[1] Plaintiffs cannot amend their complaint by response brief. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

1

held in *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007), a screening requirement imposed by Federal regulation is not primarily for the employer's benefit. Plaintiffs also argue that they have to pass through the radiation monitors to do their job. This is the precise "but-for" causation argument that the *Bonilla* court rejected when it held that "the 'integral and indispensable' test is not a but-for test of causal necessity." *Id.*

Most tellingly, however, Plaintiffs fail to address why the Supreme Court's decision on indistinguishable facts in *Integrity Staffing Solutions v. Busk*, __ U.S. __, 135 S. Ct. 513 (2014), does not bar their claim. Ignoring *Busk*, the Plaintiffs claim their case is like *Steiner v. Mitchell*, 350 U.S. 247 (1956)—a case decided on facts not resembling their employment situation. In *Steiner*, the time spent by employees showering and changing clothes to remove lethal chemicals was integral and indispensable in part because the employer conceded that these activities were "indispensable to the performance of their productive work." *Id.* at 251. That was because toxic liquids, solids, powder, and vapor "permeate[d] the entire plant and everything and everyone in it" and it was "almost impossible" to keep these toxins within safe limits. *Id.* at 332. Thus, the employees literally could not work productively without removing the chemicals because they would likely otherwise contract lead poisoning or experience sulfuric acid burns on their skin. *Id.* at 249, 251. Although their Amended Complaint does not so allege,

2

Plaintiff argue that they are like the employees in *Steiner* because they "are exposed to radiation on a daily basis as they work diligently to ensure that the nuclear plant is safe." (Resp. at 16.) The Court can take judicial notice that this is untrue. As shown by the NRC regulations themselves, the entire purpose of portal monitoring is to strictly regulate radiation to ensure that nuclear employees are ***not*** exposed beyond safe dosage limits. 10 C.F.R. §§ 20.1502, 20.2206(b); *see also* Nuclear Regulatory Commission: High Radiation Doses, *available at* *http://www.nrc.gov/about-nrc/radiation/health-effects/high-rad-doses.html*; Nuclear Regulatory Commission: Measuring Radiation, *available at* http://www.nrc.gov/about-nrc/radiation/health-effects/detection-radiation.html (explaining that radiation portals "alarm" when they detect the "presence of radioactive materials"). Plaintiffs are no more "exposed to radiation on a daily basis" than someone who lives in a large city, watches television, or flies on a coast-to-coast airline flight. Nuclear Regulatory Commission: Measuring Radiation, *available at* http://www.nrc.gov/about-nrc/radiation/health-effects/measuring-radiation.html; *see also Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 593-94 (2d Cir. 2007) (holding that *Steiner* was factually distinguishable from the employment situation of nuclear plant employees). Plaintiffs fail to show that passing through radiation monitors is "integral and indispensable"; thus, they are limited to showing that a Portal-to-Portal Act exception saves their claims.

## II. The Portal-To-Portal Act Does Not Force Employers To Continue A Custom Or Practice Indefinitely.

Plaintiffs assert that because TVA paid them for time spent undergoing radiation monitoring in the past, the Portal-to-Portal Act compels TVA to continue this practice indefinitely. Plaintiffs argue that "[o]therwise, an established custom or practice could be changed unilaterally—at the whim of the employer—which would render § 254(b)(2) completely unnecessary." (Resp. at 7.) Plaintiffs do not address how this can be the case where the plain language of the statute provides otherwise.[2] 29 U.S.C. § 254(b)(2).

Plaintiffs' argument also fundamentally misunderstands the scope of the FLSA, which—at its core—guarantees only two narrow rights: (1) a minimum wage for all hours worked up to 40 in a workweek, and (2) 1.5 times their regular rate of pay for all hours worked in excess of 40 in a workweek.[3] 29 U.S.C. § 207(a)(1) (2006); *Lundy v. Catholic Health Sys.*, 711 F.3d 106, 116 (2nd Cir.

---

[2] Plaintiffs distinguish Defendants' cited cases interpreting this plain language because those cases involved "commuting and travel time" and arose "in the context of summary judgment." (Resp. at 10.) Plaintiffs do not explain why this matters. The cases are on-point not because of their facts or procedural posture, but because they interpret the statute to mean what it says: a custom or practice is not compensable unless it exists when the work is performed.

[3] Plaintiffs' Amended Complaint seeks wages at the rates provided in their CBA. (Am. Compl. ¶¶ 45-48.) However, such damages are not available under the FLSA. *See* 29 U.S.C. § 207(a)(1). In fact, any premium wages paid under the CBA would be set off against any FLSA-based damages. 29 U.S.C. § 207(h)(2).

2013). Simply stated, the FLSA is not a mechanism to enforce broad rights beyond its minimum wage and overtime requirements.

The Portal-to-Portal Act, in turn, only defines what is "work" that must be compensated at the FLSA-required minimum wage and overtime rates. It does not—by its text or underlying purpose—enforce or overturn an employer's decision to end a custom or practice. It just requires that, if a custom or practice exists to compensate an employee for an activity, then the employer must pay minimum wage and overtime for time spent performing that activity.

### III. No "Unwritten Contract" Exists As a Matter Of Law.

Plaintiffs allege for the first time in their response brief that there is an unwritten "implied contract" that makes passing through radiation monitors "work" under § 254(b)(1). The Court can dispose of this argument on legal bases. To the extent Plaintiffs assert that there is an implied contract to pay for time spent passing through radiation monitoring apart from their CBA, their claim fails as a matter of law. There can be no implied contract when there is an express contract governing the same subject matter. *Atlas Corp. v. United States*, 895 F.2d 745, 754-755 (Fed. Cir. 1990) ("The existence of an express contract precludes existence of an implied contract dealing with the same subject, unless the implied

contract is entirely unrelated to the express contract.")[4]  Here, the Plaintiffs are subject to a CBA that governs the terms of their employment.  The express terms of the CBA already address Plaintiffs' work hours and overtime pay—the exact issues on which they claim an implied contract exists.  (Doc. 14-4, Expired CBA at ECF pp. 6-8, 18-21; Doc. 14-3, CBA at ECF pp. 5-7, 18-21.)

This is all the more so because the CBA precludes any implied contract:

> The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject matter or matter not removed by law from the area of collective bargaining, and that the understanding and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement.  Therefore, TVA and the Union, for the life of this Agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter not specifically referred to or covered in this Agreement, even though such subjects or matters may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed this Agreement.

(Doc. 14-4, Expired CBA at ECF p. 26; Doc. 14-3, CBA at ECF p. 26.)

If Plaintiffs are claiming that the alleged course of dealing ripened into an implied term of the already-existing CBA, this claim fails as well.  It is true that,

---

[4] The Court must decide Plaintiffs' "actual and quasi-contract claims against TVA as a matter of federal law and not the law of any state." *Hoke Co., Inc. v. TVA*, 661 F. Supp. 740, 744 n. 3 (W.D. Ky. 1987) (collecting cases ).  Moreover, when interpreting the terms of TVA's labor contracts, courts primarily look to the actual contract language in light of "the federal common law of contracts" because the various private and public sector labor laws are inapplicable to TVA.  *See Salary Policy Employee Panel v. TVA*, 149 F.3d 485, 490 (6th Cir. 1998).

under certain circumstances, parties can impliedly amend a contract by their course of behavior.[5] *See Bonnell/Tredegar Indus., Inc. v. NLRB*, 46 F.3d 339, 344-45 (4th Cir. 1995). But the FLSA does not provide any mechanism to determine a threshold issue regarding the existence of an implied CBA term. *See Vadino v. A. Valley Eng'rs*, 903 F.2d 253, 266 (3rd Cir. 1990) (holding that FLSA "claims which rest on interpretations of the underlying collective bargaining agreement must be resolved [under the applicable grievance procedure]"); *see also Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 741 n.19 (1981) ("courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement"). Because the applicability of § 254(b)(1) is entirely derivative of any alleged breach of the claimed implied CBA term, it is concomitantly dependent on a disputed interpretation of the CBA. The Plaintiffs' CBA, in turn, requires them to grieve any "difference of opinion between TVA and an employee of the Union" regarding the terms of the agreement. (Expired CBA at ECF p. 11; CBA at ECF p. 10.) As a result, unless Plaintiffs come to this Court with a favorable arbitration decision in hand, their claim cannot rest on the Portal-to-Portal Act's § 254(b)(1) exception either.

---

[5] Plaintiffs are security guards at Browns Ferry, which is only one of TVA's nuclear plants. (Am. Compl. ¶ 12.) The CBA is between TVA and USGOA as representative for the bargaining unit made up of all TVA nuclear security officers (Expired CBA at ECF p. 2; CBA at ECF p. 2). Plaintiffs do not explain—and TVA cannot fathom—how the course of dealing by employees and management at only one of multiple plants can create a global implied contract term.

Respectfully submitted,

*s/Tricia L. Roelofs*
Edwin W. Small, Deputy General Counsel
Tricia L. Roelofs, Attorney
TVA GENERAL COUNSEL'S OFFICE
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.6225
Email tlroelofs@tva.gov

Attorneys for Defendants

31157853

## CERTIFICATE OF SERVICE

I certify that on May 22, 2015, the foregoing document was filed electronically through the Court's ECF system. Notice of this filing will be sent by operation of the Court's ECF system to counsel for Plaintiffs as indicated below.

>Christopher S. Hamer, Esq.
>Hamer Law Group, LLC
>205 20th Street N, Suite 710
>Birmingham, Alabama 35203
>Telephone 205.218.4436
>chris.hamer@hamerlawgroup.com
>
>Comeka Anderson Díaz, Esq.
>UGSOA International Union
>8670 Wolff Court, Suite 210
>Westminster, Colorado 80031
>Telephone 303.842.9862
>candersondiaz@ugsoa.com

>>*s/Tricia L. Roelofs*
>>Attorney for Defendants