FILED
2015 Aug-07  AM 11:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DANNY OLIVE, JR., et al.,** <br> **on behalf of themselves, and others** <br> **similarly situated,** | &#124; <br> &#124; <br> &#124; <br> &#124; | |
| Plaintiffs, | &#124; <br> &#124; | **Civil Action Number** <br> **5:15-cv-00350-AKK** |
| v. | &#124; <br> &#124; | |
| **TENNESSEE VALLEY AUTHORITY,** <br> **et al.,** | &#124; <br> &#124; <br> &#124; | |
| Defendants. | | |

## <u>MEMORDANDUM OPINION</u>

Danny Olive, Jr., Leslie Hill, Marion Holden, Eric McMillen, and Nicholas Parker (collectively "the plaintiffs") bring this action against the Tennessee Valley Authority and William Johnson ("the defendants" or "TVA") for violation of the Fair Labor Standards Act of 1938 (the "FLSA"), 29 U.S.C. §§ 206 *et seq*., as modified by the Portal-to-Portal Act of 1947, 29 U.S.C. § 254 *et seq*. Doc. 4. In a nutshell, the plaintiffs allege that TVA violated the minimum wage and overtime pay requirements of the FLSA by not paying them for time spent traveling to an exit and undergoing radiation screening. *Id.* The defendants move to dismiss the

complaint, doc. 13, and the motion is fully briefed and ripe for review, docs. 14,

19, 22. For the reasons stated below, the motion is **GRANTED**.[1]

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief."

"[T]he pleading standard Rule 8 announces does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions"

or "a formulaic recitation of the elements of a cause of action" are insufficient.

*Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted). "Nor does

a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a

complaint fails to state a claim upon which relief can be granted. On a motion to

dismiss under Rule 12(b)(6) the court accepts all factual allegations as true. *See,*

*e.g., Grossman v. Nations Bank, N.A.*, F. 3d 1228, 1231 (11th Cir. 2000). However,

legal conclusions unsupported by factual allegations are not entitled to that

---

[1] Plaintiffs moved to strike two of the documents attached to the defendant's brief in support of dismissal. Doc. 18. Because the defendants concede "that the Court should not consider these document in ruling" on the motion to dismiss, doc. 23 at 1, the court will disregard the documents at issue.

2

presumption of truth. *Iqbal*, 556 U.S. at 664. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. FACTUAL BACKGROUND

The following is an account of the plaintiffs' allegations, accepted as true, that are pertinent to the resolution of the defendants' motion. The plaintiffs are current and former security guards at TVA's Browns Ferry Nuclear Plant ("Browns Ferry" or the "plant") in Athens, Alabama. Doc. 1. After clocking out at the end of their shift and turning in their firearms, the plaintiffs and all other security officers are required to walk "approximately 150 yards" to the exit and wait in line to undergo radiation screening before leaving the plant. *Id.* at 7. This

normally entails a total of ten to fifteen minutes of waiting and screening, but may take as long as an hour and a half during peak times and outages. *Id.* at 8. The plaintiffs contend that they are due wages for this time, and, as a result, seek back pay and other damages. *Id.* at 11, 13, 15.

The plaintiffs initially worked at Browns Ferry as subcontractors employed by Pinkerton Corporate Risk Management ("Pinkerton"). *Id.* at 6. During their employment with Pinkerton, the plaintiffs and other security officers successfully filed a grievance against Pinkerton requesting payment for the time they spent waiting for processing at the end of their shifts. *Id.* at 7. As a result of the grievance, Pinkerton changed its compensation practices by allowing security officers to revise the recorded time of their shift ending based on their own estimate of their actual time of departure on the following day. *Id.* at 8. TVA adapted this practice when it began employing the plaintiffs directly in June 2009. *Id.* at 6, 8. However, on April 10, 2012, TVA notified the plaintiffs that it would no longer allow them to make corrections to their exit time, and would not pay them for time they spent at the plant after turning in their firearms and signing out of their shift. *Id.* The plaintiffs challenged this policy by filing a grievance with TVA, in accordance with the Collective Bargaining Agreement ("CBA") between TVA

and the plaintiffs' union.[2] *Id.* at 6. After unsuccessfully pursuing relief under the CBA, the plaintiffs filed this lawsuit. *Id.* at 8–9, 15.

## III. ANALYSIS

The defendants move to dismiss the complaint for failing to state a claim that can be remedied under the FLSA. Docs. 13, 14. The defendants contend that traveling to the exit and undergoing radiation monitoring is not work for the purposes of the FLSA because they are not the principal activities which TVA employs the plaintiffs to perform. Alternatively, they assert that neither of the exceptions contained within the Portal-to-Portal Act apply to these activities. The court will evaluate the defendants' arguments with regards to principal activities compensable under the FLSA, followed by the exceptions provided by the Portal-to-Portal Act.

### A. Principal Activities under the FLSA

The FLSA requires employers to pay employees a minimum wage for all hours worked and overtime pay for hours over forty within a workweek, but does not provide definitions of "work" or "workweek." 29 U.S.C. §§ 206, 207. In short-lived opinions issued soon after the FLSA's passage, the Supreme Court construed these terms broadly, so as to encompass preliminary and postliminary activities,

---

[2] The CBA expired on May 24, 2013. Since that time, the plaintiffs have worked under a non-ratified contract whose relevant provisions are identical to those of the original CBA. Doc. 1 at 7; *see* doc 14-3 and 14-4.

which unleashed a "flood of litigation" seeking pay for "various preshift and postshift activities." *Integrity Staffing Solutions v. Busk,* 135 S. Ct. 513, 516 (2014) (citing *Tenn. Coal, Iron, & R.R. Co. v. Muscoda Local 123*, 321 U.S. 590 (1944) (superseded by statute)); *see also Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) (superseded by statute). In the wake of *Tennessee Coal* and *Anderson*, Congress found that the FLSA had "been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation" that, left unchecked, would result in the "financial ruin of many employers" and "windfall payments" to employees "for activities performed by them without any expectation of reward beyond that included in their agreed rate of pay." *Integrity Staffing Solutions*, 135 S. Ct. at 516-17 (quoting 29 U.S.C. §§ 251 (a-b)) (internal quotation marks omitted). Congress passed the Portal-to-Portal Act in order to prevent this outcome by "exempt[ing] employers from liability for future claims based on two categories of work-related activity as follows":

> [N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employees . . .

> (1) walking, riding, or traveling to and from the actual place of performance of the principle activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary or postliminary to said principle activity

*Id.* at 517 (citing 29 U.S.C. § 254(a)). The Supreme Court has consistently interpreted principal activities to "embrace all activities which are an integral and indispensable part of the principal activities." *Id.* (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29-30 (2005)) (internal quotation marks omitted). Something is integral and indispensable to principal activities if "it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.*

The defendants contend that the activities at issue here are covered under the Portal-to-Portal Act, as time spent walking to the exit plainly falls under the § 254(a)(1) list of noncompensable activities, while the radiation scans and time spent waiting for them are postliminary activities that are not a part of plaintiffs' principal activities, and thus fall under § 254(a)(2). Doc. 14 at 7. The plaintiffs disagree, and, based on the radioactive nature of their work environment, contend that the radiation scans are integral to their positions. Doc. 19 at 12–17. While it is undisputed that passing through the radiation scans, a safety regulation imposed by the Nuclear Regulatory Commission, doc. 22, cannot be dispensed with, the plaintiffs overlook that "indispensable is not synonymous with integral." *Gorman*

*v. Consol. Edison Corp.*, 488 F.3d 586, 592 (2d Cir. 2007) (citing *IBP*, 546 U.S. at 21) (internal quotation marks omitted). Indeed, "consistent with this approach," the Department of Labor's regulations provide that "when performed under the conditions normally present," activities including "checking in and out and waiting in line to do so, changing clothes, washing up or showering" are not integral to the employee's principle activity, but are instead preliminary or postliminary activities. *Integrity Staffing Solutions*, 135 S. Ct. at 518 (internal quotation marks omitted) (citing 29 C.F.R § 790.7(g)). In that respect, it is evident from the complaint that plaintiffs are employed to provide security, not to wait in line and undergo radiation scanning. Moreover, the complaint contains no facts that distinguish the processing the plaintiffs undergo from other preliminary and postliminary activities covered by the Portal-to-Portal Act. In fact, as pleaded, their position is indistinguishable from that of the warehouse employees in *Integrity Staffing Solutions*, whom the Court held were employed to "retrieve products from warehouse shelves and package those products," not to "undergo security screenings," making those screenings non-integral. *Id.* at 518. The fact that the Browns Ferry scans are conducted for the purposes of safety, unlike the theft prevention screening in *Integrity Staffing Solutions*, has no significance on the determination, because the Department of Labor has "dr[awn] no distinction

between . . . searches conducted for the safety of the employees" and identical processing procedures implemented for theft or other purposes. *Id.* at 519.

Focusing on the safety aspect of the scans, the plaintiffs contend that they are similar to the plaintiffs in *Steiner v. Mitchell*, in which the Supreme Court held that changing clothes before shifts and showering at their end were integral to working in a battery manufacturing plant permeated with "dangerous and caustic chemicals." Doc. 19 at 15–16; *see Steiner v. Mitchell*, 350 U.S. 247 (1956). In *Steiner*, the plaintiffs were battery plant workers who were exposed to a "very great" risk of lead poisoning and "severe burns" from sulfuric acid in an environment where the harmful chemicals were "almost impossible to keep within absolutely safe limits." *Steiner,* 350 U.S. at 249–50. The Court observed that "it would be difficult to conjure up an instance where changing clothes and showering are more clearly an integral and indispensable part of the principal activity of employment than in the case of these employees." *Id.* at 256 (internal quotation marks omitted). The reliance on *Steiner* is misplaced because, as plaintiffs concede, "working at a nuclear power plant is not as caustic as working at a battery manufacturing plant . . . ." Doc. 19 at 16. While the plaintiffs are correct that they "are exposed to radiation on a daily basis . . . [and] that radiation can be very harmful to humans," *id.*, there is nothing in the Amended Complaint to suggest that their potential exposure differs from what the average citizen experiences, or that

their level of purported exposure makes their daily environment akin to that in *Steiner*. The alleged facts here are virtually identical to those in *Gorman v. Consolidated Edison Corporation*, in which the Second Circuit persuasively distinguished the facts of *Steiner* from those of plant workers at the Indian Hills nuclear power station who filed a claim seeking wages for time spent, among other things, "waiting in line and passing through a radiation detector" for a period of "ten to thirty minutes" at the beginning and end of shifts. 488 F.3d at 592. The *Gorman* court read *Steiner* narrowly to "support[ ] the view that when work is done in a lethal environment, the measures that allow entry and immersion into the dangerous element may be integral to the work done." *Id.* at 593. It does not apply to such activities when they are performed under "normal conditions," i.e. in the absence of a lethal environment. *Id.* at 590 (citing *Steiner*, 350 U.S at 256). The court found that the radiation screenings at the Indian Hills plant were not necessary for survival in any lethal environment or integral to the principal activity of working in a nuclear plant, but were instead "modern paradigms of preliminary and postliminary actions described in the Portal-to-Portal Act" which serve "essential purposes of security." *Id*. at 593. The *Gorman* court deemed the comparison between the nuclear plant and the *Steiner* battery manufacturing plant to be "unsustainable," noting that "[w]ithout the taking of the measures required, the battery plant could not sustain life," as opposed to the nuclear plant, which

presented no comparable imminent danger. *Id*. The court finds the reasoning of *Gorman* persuasive.

Nothing in the amended complaint distinguishes the plaintiffs' claims from *Gorman*. More specifically, the plaintiffs fail to allege that Browns Ferry is a potentially lethal environment and that the processing measures are necessary for them to safely perform their principal activity. While the plaintiffs ask the court to take judicial notice of the general dangers of radiation exposure, doc. 19 at 16, these risks do not rise to the level of a lethal environment incapable of sustaining life. Consequently, the exit and scanning procedures that the plaintiffs seek payment for cannot be considered integral to the principal activity of their employment, and are thus covered by the Portal-to-Portal Act, making relief unavailable under the FLSA. 29 U.S.C. § 254(a)(2).

### B. Exceptions for Claims Compensable by Contract

The Portal-to-Portal Act provides two exceptions to § 254(a) that allow preliminary, postliminary, or otherwise non-principle activities to constitute work. The exceptions are:

(1) [A]n express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten

> contract, in effect at the time of such activity, between such employee,
> his agent, or collective-bargaining representative and his employer.

29 U.S.C. § 254(b). As to the first exception, the amended complaint does not allege the existence of any written or nonwritten contract stipulating payment for the activities in question, and both the original CBA between the plaintiffs' union and TVA as well as the unratified CBA that came into effect in May 2013 are silent on the issue. *See* docs. 14-3, 14-4, 19 at 9. In fact, both versions of the CBA directly address the plaintiffs' hours of work and pay provisions, with no reference to work occurring after a shift has ended.[3] Docs. 14-3 at 6, 14-4 at 6. Perhaps, as a way to sidestep this fact, the plaintiffs contend that "[t]he facts alleged in the . . . complaint . . . could certainly support the existence of a 'nonwritten contract' for the compensability of the activities claimed." Doc. 19 at 10. This argument is a non-starter because, under Alabama law, an express contract such as the CBA precludes the existence of unwritten contracts regarding the same subject matter. *Miles v. Tenn. River Pulp & Paper Co.*, 862 F.2d 1525, 1529 (11th Cir. 1989); *Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So. 2d 443, 447 (Ala. 1996). Moreover, both versions of the CBA contain language expressly precluding the formation of a nonwritten contract:

---

[3] The amended complaint refers to both versions of the CBA, which is both central to their claim as well as undisputed by the defendants. As such, the court may review these documents without converting the motion to dismiss to a motion for summary judgment. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)

> The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject matter or matter not removed by law from the area of collective bargaining, and that understanding and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement. Therefore, TVA and the Union, for the life of this Agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter not specially referred to or covered in this Agreement, even though such subjects or matters may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed this Agreement.

Docs. 14-3 at 26, 14-4 at 26. Therefore, because the contract exception of the Portal-to-Portal Act requires that there be "an express provision of a . . . contract in effect, at the time of such activity," 29 U.S.C. § 254(b)(1), and neither party disputes that the relevant CBA explicitly precludes the formation of unwritten contracts "for the life of this Agreement," docs. 14-3 at 26, 14-4 at 26, no contract providing payment for the activities in question, written or unwritten, could have existed during the time of those activities.

### C. Exceptions for Claims Compensable by Custom or Practice

The plaintiffs alternatively argue that their post-shift activities are compensable under the § 254(b) exception because of TVA's custom of compensating them for those activities. Neither party disputes that TVA had a practice or custom of paying the plaintiffs for time spent walking to the exit, waiting in line, and going through radiation scans between June 2009 and April

13

2012, prior to the occurrence of the activities plaintiffs seek payment for in this lawsuit. Docs. 1 at 9, 14 at 8-9. Instead, the plaintiffs take issue with the termination of the custom, contending that the unilateral action by the TVA "abruptly ended an agreed upon practice that existed for years, and [that] if [TVA] were almost any other federal agency . . . [it] would have committed an Unfair Labor Practice." Doc. 18 at 11 (citing 5 U.S.C. § 7116). This argument is beyond the scope of relief this court can grant under the FLSA, which concerns only the payment of minimum and overtime wages. *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008); *see also Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 643 (9th Cir. 2014), as amended (Jan. 26, 2015*) cert. denied*; *Davis v. Abington Memorial Hosp.*, 765 F.3d 236, 244 (3d Cir. 2014); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 116 (2d Cir. 2013).

Additionally, Department of Labor regulations interpreting the statutory exemption provide that it "would also seem to permit recognition of changes in customs, practices, and agreements which reflect changes in labor-management relations or policies." 29 C.F.R. § 790.11. The defendants cite multiple cases in which courts have interpreted the statute to allow such changes. Doc. 14 at 9 (citing *Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 421 (5th Cir. 2011) (holding that past custom of compensating technicians for commute did not obligate employer to pay after ceasing that practice); *Little v. Tech. Specialty*

*Prods., LLC*, 940 F. Supp. 2d 460, 473-74 (E.D. Tex. 2013) (finding that employer changing their custom of paying oil rig technicians overtime for commute ended obligation to pay); *Lee v. City of Ark.*, No. 4-09-CV-00243, 2010 WL 2491425, at *3 (E.D. Ark. June 17, 2010) (finding that city changed previous custom of reimbursing police officers for travel time and policy no longer applied); *Johnson v. RGIS Inventory Specialists*, 554 F. Supp. 2d 693, 707–08 (E.D. Tex. 2007) (holding that employer had discretion to exclude hours spent commuting from overtime pay as a limitation of its custom)). The plaintiffs have not cited to any cases that stand for the proposition that ending a custom of payment unilaterally does not end an employer's obligation to make payments under the FLSA, nor has the court's independent research revealed any. As it is undisputed that the custom was no longer in effect at the time of the activities for which the plaintiffs seek compensation, it cannot serve as a basis for stating a claim for compensation under the FLSA.

## IV. CONCLUSION

For the reasons explained above, namely that the plaintiffs seek payment for activities specifically exempted from payment under 29 U.S.C. § 254(a) and postliminary activities exempted by § 254(b) without the benefit of an applicable exception based on contract or custom, the motion to dismiss is **GRANTED**.

**DONE** the 7th day of August, 2015.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE